UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CURTIS L. MCCUNE, III,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 2:22-cv-1373-ACA |
| ) | |
| **MARK PETTWAY,** *in his official* ) | |
| *capacity as Sheriff of Jefferson* ) | |
| *County, Alabama*, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Curtis L. McCune, III, a white police sergeant, sued Defendant Mark Pettway in his official capacity as Sheriff of Jefferson County, alleging that Sheriff Pettway allowed disparate treatment and a hostile work environment to persist in the Sheriff's Department. Sheriff Pettway has moved for summary judgment, contending that Sergeant McCune has no evidence to support either claim. (*See* doc. 16).

The court **WILL GRANT** Sheriff Pettway's motion for two reasons. First, Sergeant McCune's response brief forfeited any argument in response to Sherriff Pettway's motion. Second, Sheriff Pettway has carried his burden of establishing that Sergeant McCune has no evidence of disparate treatment or a hostile work environment.

The court is troubled by the behavior from counsel for Sergeant McCune in this case. First, Sergeant McCune's counsel ignored the court's scheduling order and associated discovery deadline. (*See* docs. 13, 15). After the court warned counsel that the court's orders "set[] out deadlines, not polite suggestions or goals for accomplishing tasks by certain dates" (doc. 15), counsel missed the deadline to respond to Sheriff Pettway's motion (*compare* doc. 18, *with* doc. 20, *and* doc. 21). After counsel received a retroactive extension of the court's briefing schedule (*see* doc. 21), counsel nevertheless missed the amended deadline (*compare id.*, *with* doc. 22). And when counsel filed this untimely brief on his client's behalf, the brief forfeited Sergeant McCune's arguments. (*Compare* doc. 22 at 6–7), *with infra* at 7–12.

## I. BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the nonmovant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true,

historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

Sergeant McCune currently works for the Jefferson County Sheriff's Office. (Doc. 17-1 at 3). During the time relevant to his claims, he worked in the Bessemer Corrections Division. (*See id*. at 3–4, 9–10; *see also* doc. 17-5 ¶¶ 2–3). And his direct supervisor during this time was Lieutenant[1] Terry Guinn, a black man. (Doc. 17-5 ¶ 3; *see also* doc. 1 ¶ 14).

Sergeant McCune did not like Lieutenant Guinn's leadership style. (*See, e.g.*, doc. 17-1 at 23–24). According to Sergeant McCune, Lieutenant Guinn was demanding, aggressive in conversations, and yelled at his subordinates. (*See id.* at 23–25; *see also e.g.*, *id*. at 26–27, 30, 35). Although Sergeant McCune acknowledges that Lieutenant Guinn spoke to "many" of his subordinates this way (*id*. at 24, 30), he contends that Lieutenant Guinn routinely picked on him and disciplined him (*see* doc. 17-1 at 27). The parties present evidence of five instances in which Lieutenant Guinn disciplined Sergeant McCune. (*See* doc. 17-2 ¶¶ 11–16; *see also* doc. 17-1 at 27, 52, 54).

---

[1] Lieutenant Guinn has been promoted to the rank of captain, but at the time of the events giving rise to this action, he was a lieutenant. (*See* doc. 17-5 ¶¶ 2–3). The court refers to him as "Lieutenant Guinn" to match the rank he had in the relevant documents in the evidentiary record. (*Compare id*., *with* doc. 17-3 at 18) (describing Sergeant McCune's supervisor as "Lieutenant T. Guinn").

3

The first incident occurred in April 2020. (*See* doc. 17-2 ¶ 12). At that time, Lieutenant Guinn had implemented a "minimum staffing schedule" at Bessemer County Jail, which permitted employees to work overtime if staffing fell below the minimum requirement. (Doc. 17-3 at 18). Sergeant McCune allowed a deputy to work overtime despite having staff at or above the minimum requirement. (*See id.*). Lieutenant Guinn issued a written warning for Sergeant McCune's violation of his instruction. (*See id.*; doc. 17-2 ¶ 12; doc. 17-1 at 12).

The second incident occurred in September 2020. (*See* doc. 17-2 ¶ 13). Sergeant McCune testified that he "was accused of not watching the [inmate] rollback on the north side" and denied wrongdoing because he was assigned to supervise the south side. (Doc. 17-1 at 12). Although Sergeant McCune maintains that it was not his responsibility to supervise the north side, he "didn't say anything" because he did not want to "rock the boat." (*Id.*). Sergeant McCune received a written reprimand for his alleged violation of Jefferson County Sheriff's Office Policy and Procedure 03-03.45, which obligates supervisors to ensure that subordinates perform their duties appropriately. (Doc. 17-3 at 20, 27–32; *see also id.* at 9).

The third incident occurred in December 2020. (*See* doc. 17-2 ¶ 14). During that incident, Sergeant McCune was not at work because he was recovering from surgery. (*See* doc. 17-1 at 7, 13; *see also* doc. 17-2 ¶ 14). According to the

4

disciplinary notice, Sergeant McCune did not report to work, did not notify Lieutenant Guinn of his need to take time off, and did not return Lieutenant Guinn's phone calls during this time. (*See* doc. 17-3 at 34–35; *see also* doc. 17-1 at 13). Sergeant McCune received a written reprimand for his failure to notify a supervisor of his need to take time off and failure to respond to Lieutenant Guinn's phone calls regarding his whereabouts, in violation of Jefferson County Sheriff's Office Policy and Procedure 4-05.55 and 04-03.50. (Doc. 17-3 at 34–35; *see also id*. at 15–16; doc. 17-2 ¶ 14).

The remaining two incidents occurred in June 2021 and are related. (*See* doc. 17-2 ¶¶ 15–16). Sergeant McCune had instructed dayshift deputies not to leave their assigned areas until he cleared them, but on one occasion, several deputies left before Sergeant McCune cleared them. (Doc. 17-3 at 40; doc. 17-2 ¶ 15). Sergeant McCune told Lieutenant Guinn that he would discipline those deputies but did not investigate the matter, follow up with Lieutenant Guinn, or discipline any of those deputies. (*See* doc. 17-3 at 40; doc. 17-2 ¶ 15; *see also* doc. 17-3 at 10).

A few days later, Lieutenant Guinn directed Sergeant McCune to investigate why deputies placed inmates in lock down for three hours after breakfast without performing cell checks in violation of the jail's General Order 3-2. (Doc. 17-4 at 5; doc. 17-2 ¶ 16; *see also* doc. 17-3 at 37 ¶ (A)(1)). That order requires that if inmates are secured in their cell for more than one hour after mealtimes, the Shift Sergeant

must be notified and deputies must perform "at least one block check every hour." (*See* doc. 17-3 at 37 ¶ (A)(1)). Sergeant McCune did not investigate the matter, follow up with Lieutenant Guinn, or discipline any of his subordinates. (*See* doc. 17-4 at 5; doc. 17-2 ¶ 16). Although Sergeant McCune testified that he "was never insubordinate" (doc. 17-1 at 21), he testified and submitted statements to the Jefferson County Personnel Board that—at a minimum—confirm that he did not investigate or discipline his subordinates (*see id*. at 31; doc. 17-4 at 14).

So, on June 30, 2021, Lieutenant Guinn met with Sergeant McCune to discuss the two June 2021 incidents. (Doc. 17-2 ¶ 17; doc. 17-1 at 31–32; doc. 17-4 at 2–3, 7, 9–10, 12). During the meeting, Sergeant McCune became flushed and agitated and then ultimately unresponsive. (Doc. 17-4 at 2–3, 7, 14; *see also* doc. 17-1 at 31). Sergeant McCune suffered a ministroke and was transported to the hospital by ambulance. (Doc. 17-1 at 31; *see* doc. 17-4 at 7; doc. 17-2 ¶ 20).

Sergeant McCune filed a grievance with the Jefferson County Personnel Board, contending that Lieutenant Guinn's leadership style had negatively impacted his health. (*See* doc. 17-4 at 14–15). And he subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that he had been subjected "to ongoing harassment and disparate treatment" due to his race. (*See* doc. 1-1 at 2–3). After Sergeant McCune filed his EEOC charge, the Sheriff's Office notified him that it was contemplating

disciplinary action against Sergeant McCune for the incident of insubordination in June. (*See* doc. 17-4 at 37–38; doc. 17-1 at 33).

## II.   DISCUSSION

Sheriff Pettway moves for summary judgment as to all claims against him. (Doc. 16). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court first explains why Sergeant McCune's counsel has forfeited any argument in response to Sheriff Pettway's motion and then considers Sheriff Pettway's arguments on their merits.

### 1.   Sergeant McCune's Responsive Brief

Sheriff Pettway timely moved for summary judgment (*compare* doc. 9, *with* doc. 16), and the court directed Sergeant McCune to file his response on or before December 22, 2023 (doc. 18). One month after that deadline expired,[2] Sergeant McCune moved for an extension of the court's December 22 deadline. (Doc. 20). The court granted that motion and directed him to file a brief on or before February 7, 2024; counsel filed the brief on February 8, 2024 at 1:05 a.m. (Docs. 21, 22).

---

[2] Nine months after discovery began and thirty days after representing that discovery was "ongoing in accordance with the scheduling order" (doc. 11 at 1), Mr. McCune moved to extend the discovery deadline to take depositions of the only two witnesses Mr. McCune wished to depose (docs. 9, 11, 13). The court denied his motion. (Doc. 15).

On review of the response, neither the extension nor Mr. McCune's decision to *sua sponte* take an additional extension without acknowledging the untimeliness of the was helpful or necessary. The argument section of Sergeant McCune's brief is devoid of any analysis. The brief begins by describing the general legal frameworks for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*. (*See* doc. 22 at 4–6). And then, the brief concludes. (*See id*. at 6–7).

A party must adequately brief an argument by citing authority, referring to the facts of the party's case, and providing a "meaningful explanation" for how the legal authority "appl[ies] to [the party's] claim." *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022). "[P]assing references" simply do not suffice. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). And when a party fails to adequately brief an argument, that argument is forfeited. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc); *United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) ("declin[ing] to address the merits" of a "skeletal argument" that included only "a bare citation" to the record); *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 n.4 (11th Cir. 2022) (holding that the plaintiff had forfeited an argument when she "dedicate[d] just two sentences to" it).

The entirety of Sergeant McCune's response to Sherriff Pettway's arguments regarding his disparate treatment claim is:

8

> Here, [Sergeant McCune] has established that he was targeted for discipline because of his race, white, while other similarly situated black employees were treated more favorably than [Sergeant McCune].
>
> Thus, [Sergeant McCune] has satisfied his burden of stating a prima facie case of race discrimination under Title VII.

(Doc. 22 at 6) (citation omitted). And he cites the following portion of the evidentiary record for that assertion:

> [Plaintiff's Counsel]: . . . This [document] is just simply [Sergeant McCune's] own personal notes. So I'm going to object at this time.
>
> [Defendant's Counsel]: And I understand that, but [Sergeant McCune has] been reading from it as part of his testimony, so I am entitled to see what he's been reading from . . . . [Y]ou know that.

(Doc. 17-1 at 25). The relevance of this discussion between counsel is not clear, and the court assumes that this citation was in error.

> And for his hostile work environment claim, he responds as follows:
>
> Here, [Sergeant McCune] has established that his black supervisor, [Lieutenant] Guinn, repeatedly wrote him up, berated him, and subjected him to yelling and harassment after [Sergeant McCune] filed his EEOC complaint.
>
> Therefore, [Sergeant McCune] has satisfied his burden of stating a prima facie case for hostile work environment.

(Doc. 22 at 6–7) (citations omitted). And the evidence Sergeant McCune cites for this assertion is his deposition testimony in which he confirms that he received notice of recommended disciplinary action "only after [he] filed an EEOC charge against the Sheriff's Office." (Doc. 17-1 at 33). Like his disparate treatment claim, the cited

9

evidence is irrelevant to Sergeant McCune's hostile work environment claim but this time, for a more substantive reason.

In the Eleventh Circuit, Title VII claims take three forms. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860–61 (11th Cir. 2020); *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1206–07 (11th Cir. 2021). First, there is a "disparate-treatment claim, *i.e.*, a claim that an employee has suffered a tangible employment action based on race or other prohibited characteristics." *Babb*, 992 F.3d at 1206–07 (quotation marks omitted). Sergeant McCune alleged this claim in Count One. (*See* doc. 1 ¶¶ 24–33).

The second type is a "hostile-environment claim, *i.e.*, a claim stemming from mistreatment based on a protected characteristic that is sufficiently severe or pervasive that it can be said to alter the terms, conditions, or privileges of employment." *Babb*, 992 F.3d at 1207 (quotation marks omitted). The third type is a "retaliation claim, *i.e.*, a claim stemming from retaliation for protected conduct where the mistreatment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation marks omitted). And claims that are "retaliatory-hostile-environment claims" fall into the third category. *Id.* (quotation marks omitted).

In response to Sheriff Pettway's motion, Sergeant McCune describes his claim as one "for a hostile work environment based on retaliation." (*See* doc. 22 at 6). But

10

that is not the claim he pleaded in his complaint. (*See* doc. 1 ¶¶ 34–43; *see also* doc. 23 at 5 n.1). In his complaint, Sergeant McCune alleges that he was subjected to "a pattern of hostility" due to his race; he does not allege that this pattern of hostility was connected to—let alone retaliation for—any protected activity that he took. (*Compare* doc. 1 ¶ 37), *with Babb*, 992 F.3d at 1207. The court cannot consider claims that are not contained in the operative pleading. *See Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006) (holding that the district court "correctly refused to address" a potential but not pleaded claim), *overruled on unrelated grounds as recognized in City of S. Miami v. Governor*, 65 F.4th 631, 636 (11th Cir. 2023). Accordingly, the court cannot consider Sergeant McCune's argument regarding the evidentiary support for a potential retaliatory-hostile-environment claim because he has not alleged that claim in his complaint. (*See* doc. 1 ¶ 37).

The court therefore concludes that Sergeant McCune has forfeited any argument in response to Sheriff Pettway's arguments. (*Compare* doc. 19 at 15–25, *with* doc. 22 at 4–7). He devoted only two sentences to each of his claims and neither sentence responds to the specific arguments Sheriff Pettway made. (*Compare* doc. 22 at 4–7), *with Christmas*, 51 F.4th at 1354 n.4. Sergeant McCune did not appropriately identify evidentiary support for his discrimination claim, and he relied on inapposite legal standards for his hostile work environment claim. For both claims, he does not support his sentences with authority or provide a meaningful

explanation as to why there is a triable issue of fact. (*Compare* doc. 22 at 4–7), *with Harner*, 38 F.4th at 899, *and Sapuppo*, 739 F.3d at 681–82, *and Esformes*, 60 F.4th at 635. In short, Sergeant McCune's responsive brief is entirely nonresponsive.

### 2. The Merits of Sheriff Pettway's Motion

When the nonmovant fails to respond to the movant's arguments, "the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). So, the court considers the merits of Sheriff Pettway's arguments and examines Sergeant McCune's claims sequentially.

#### a. Disparate Treatment (Count One)

In Count One, Sergeant McCune asserts a claim of discrimination; this claim is based on his contention that he "has suffered disciplinary actions for substantially similar actions that other black Sheriff's Deputies have not been disciplined for." (Doc. 1 ¶ 25; *see also id*. at ¶¶ 24–33; doc. 17-1 at 12–14, 18–19). A plaintiff may prove a claim of disparate treatment through direct or circumstantial evidence. *See, e.g.*, *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Sergeant McCune has not offered any direct evidence of discriminatory intent. (*See generally* doc. 22 at 4–6) (suggesting that "the only evidence of discrimination" in this case is circumstantial). So, the only issue in this case is whether he has presented sufficient

circumstantial evidence for a reasonable jury to find intentional discrimination based on his race.

Sheriff Pettway argues that he is entitled to summary judgment on this claim for three reasons: (1) Sergeant McCune cannot establish a prima facie case based on some of the events he identified in his deposition because those events are not adverse actions (doc. 19 at 15–16); (2) Sergeant McCune was unable to identify comparators to support his claim (*id*. at 18–19); and (3) Sergeant McCune has presented no evidence of pretext (*id*. at 20–21). The court will examine each argument in turn.

First, several of the events that Sergeant McCune testified about in his deposition were not pleaded in his complaint. (*Compare* doc. 1 ¶¶ 13–23, 25–37, *with* doc. 17-1 at 14–17, 21–22). So, any potential claims based on those events are not properly before this court. *See Brown*, 440 F.3d at 1266. Accordingly, the court does not consider Sheriff Pettway's first argument and limits its analysis to the claim Sergeant McCune has pleaded. (*See* doc. 1 ¶ 25).

Sheriff Pettway's second argument focuses on the fourth element of Sergeant McCune's prima facie case under the *McDonnell Douglas* burden shifting framework: that the Sheriff's Department "treated similarly situated employees outside h[is] class more favorably." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (quotation marks omitted). The Eleventh Circuit has identified

13

a few non-exhaustive sorts of similarities that underlie a valid comparison such as: (1) "hav[ing] engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) "hav[ing] been subject to the same employment policy, guideline, or rule as the plaintiff," and (3) "shar[ing] the plaintiff's employment or disciplinary history." *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc).

As the court previously described, Sergeant McCune's brief makes no substantive arguments on these points, including identifying a comparator. In his deposition, Segreant McCune testified that he overheard a conversation between an unnamed black employee and Lieutenant Guinn in which that employee indicated that he did not "want to get in trouble" and Lieutenant Guinn told that employee that they would "stick together." (Doc. 17-1 at 18) (quotation marks omitted). Sergeant McCune further testified that he did not know the circumstances surrounding any "trouble" the black employee might have been in and that he thought Lieutenant Guinn had "taken care of" any trouble that employee was in. (*Id*. at 19). And Sergeant McCune testified that this conversation reflected Lieutenant Guinn's discriminatory animus because, according to Sergeant McCune, Lieutenant Guinn would "have thrown [him] under the bus" if he were in trouble. (*Id*. at 19).

Sheriff Pettway argues that Sergeant McCune's deposition testimony is insufficient to establish that the Sheriff's Department treated similarly situated employees outside his protected class more favorably because Sergeant McCune was

14

unable to provide any details regarding this comparator's circumstances. (*See* doc. 19 at 19). The court agrees. *See Lewis*, 918 F.3d at 1227–28. Accordingly, Sergeant McCune has failed to create a genuine dispute of material fact under the *McDonnell Douglas* framework regarding whether he has been disciplined in a discriminatory manner.

Undeniably, a "plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case" because a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Tynes*, 88 F.4th at 946 (quotation marks omitted); *see also* (doc. 22 at 5). But the sole evidence Sergeant McCune has presented is his deposition testimony (*see* doc. 22 at 6), and that deposition testimony is insufficient to create a triable issue of fact regarding discriminatory intent.

Sheriff Pettway's third argument—that Sergeant McCune has presented no evidence of pretext—suffers from the same defect as his first; it focuses on various events that Sergeant McCune testified about but are not the basis of his claim for relief. (*Compare* doc. 19 at 19–21, *with* doc. 1 ¶ 25, *and* doc. 17-1 at 14–17, 21–22). Any claims that could be based on these events are not properly before this court because Sergeant McCune did not amend his pleadings to include such potential claims. *See Brown*, 440 F.3d at 1266. The court therefore does not consider Sheriff Pettway's argument.

Accordingly, the court **WILL GRANT** Sheriff Pettway's motion and **ENTER SUMMARY JUDGMENT** in his favor because Sergeant McCune's deposition testimony does not create a triable issue of fact regarding discriminatory intent. The court does not consider Sheriff Pettway's remaining arguments because those arguments are directed at claims that are not before this court.

### b. Hostile Work Environment (Count Two)

In Count Two, Sergeant McCune asserts a hostile work environment claim; this claim is based on Sheriff Pettway allowing Lieutenant Guinn's alleged "pattern of hostility towards white employees" to persist at the Sheriff's Department. (Doc. 1 ¶ 37; *see also id.* ¶¶ 34–43; doc. 17-1 at 22–24, 30, 35). Sheriff Pettway contends that he is entitled to summary judgment on this claim because (1) Sergeant McCune cannot show that discriminatory animus caused Lieutenant Guinn's conduct and (2) Sergeant McCune cannot show that Lieutenant Guinn's conduct was sufficiently severe or pervasive as to alter the terms of his employment. (Doc. 19 at 22–25). The court's analysis begins and ends with Sheriff Pettway's first argument.

As one of the elements of his hostile work environment claim, Sergeant McCune must establish that the workplace harassment he experienced "was based on h[is] race," *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1334 (11th Cir. 2023), because "federal law doesn't prohibit hostility in the workplace—only hostility caused by impermissible discrimination," *Harris v. Pub. Health Tr. of*

*Miami-Dade Cnty.*, 82 F.4th 1296, 1304 (11th Cir. 2023). And to avoid summary judgment on this claim, he "must demonstrate a genuine factual dispute about the causation issue." *See Harris*, 82 F.4th at 1304.

Sheriff Pettway asserts Sergeant McCune cannot meet this burden because his testimony showed that "that all sergeants under [Lieutenant] Guinn were subjected to the same threatening and intimidating leadership style." (Doc. 19 at 22) (emphasis and quotation marks omitted). Indeed, Sergeant McCune testified that he had no "reason for concluding that" Lieutenant Guinn's leadership style "was racially discriminatory" and that Lieutenant Guinn "raised his voice" at all the sergeants in the Bessemer Corrections Division. (Doc. 17-1 at 26, 30).

Although Sergeant McCune testified that he thought Lieutenant Guinn was particularly "picky" towards him (*id*. at 30), he also testified that all the sergeants were under an "unbelievable amount of pressure" (*id*. at 27). And "someone who treats everyone badly is not guilty of discriminating against anyone." *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010). Accordingly, the court is persuaded that Sergeant McCune lacks an evidentiary basis to assert that any harassment by Lieutenant Guinn was based on race. (*See* doc. 19 at 22–23).

The court therefore **WILL GRANT** Sheriff Pettway's motion and **WILL ENTER SUMMARY JUDGMENT** in Sheriff Pettway's favor as to Sergeant McCune's hostile work environment claim because he has not established that any

17

workplace harassment was based on his race. The court does not consider Sheriff Pettway's second argument regarding whether such harassment was sufficiently severe or pervasive.

### III. CONCLUSION

The court **WILL GRANT** Sheriff Pettway's motion (doc. 16) and **WILL ENTER SUMMARY JUDGMENT** in Sheriff Pettway's favor as to all claims against him. The court will enter a separate judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 2, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE